EMMA F. KERR, Administratrix, v. THE KEOKUK WATER-WORKS COMPANY, Appellant.

**Master and Servant:** NEGLIGENCE. Plaintiff's husband had been employed by defendant. While off duty on account of sickness, defendant took him to its works to make repairs. This occupied but a short time. He died soon after returning home. Defendant had no knowledge that deceased was not in possession of his mental faculties. It does not appear that any force or persuasion was used or that he was incapable to decide whether he was able to stand the trip. *Held,* a verdict against defendant should be set aside.

**Practice:** SPECIAL VERDICT. No judgment *non obstante* should be granted unless the special verdict is inconsistent with the general and sufficient of itself, in connection with facts admitted by the pleadings, to establish or defeat its right of recovery.

*Appeal from Keokuk Superior Court.*—HON. H. BANK, JR., Judge.

TUESDAY, OCTOBER 8, 1895.

The plaintiff is the administratrix of the estate of H. E. Kerr, deceased. The defendant is a corporation, and owns and operates waterworks at the city of Keokuk. H. E. Kerr was in the employ of the company for about three years. He was engineer for the works, and had supervision of the operation of the pumping machinery. About the first day of March, 1893, he

became sick of the disease called "La Grippe," and on the thirteenth day of the same month he died. This action was brought to recover damages on the ground that his death was caused by the negligent and wrongful acts of the defendant. There was a trial by jury, which resulted in a verdict for the plaintiff for three thousand·dollars. From a judgment on the verdict, the defendant appeals.—*Reversed.*

*Jas. C. Davis* for appellant.

*J. F. Smith* for appellee.

Rothrock, J.—It is not claimed that the defendant is in any way responsible for the original attack of sickness of the deceased. The fact is the disease originated without any known cause, and Kerr continued to perform his duties as engineer at the waterworks for three or four days, and until Saturday evening, March 4th, when he laid off or quit, as was supposed temporarily, because of his sickness, and his place at the works was taken by D. W. Swartz, the superintendent of the company. On the following Monday morning he went to the office, and drove out to the works in company with the superintendent, and said that, if anything went wrong, to send for him. He was again at the office of the company on Tuesday evening, March 7th, and had a conversation with the superintendent. On Thursday morning, the ninth of March, a pump at the plant, which had been recently put in position under the supervision of Kerr, did not operate properly, and the superintendent and other employes were unable to remedy the defect. The superintendent sent a carriage to the place where Kerr was stopping, with a request that, if he was able, he (the superintendent) would like to have him come to the waterworks, that something was wrong with the pump. A

carriage was procured, and one Evans, who had been in the employ of the company, together with the driver of the carriage, went to the house where Kerr was stopping, and delivered the message. Kerr dressed himself, and went to the works, and in a very short time rectified the trouble with the pump, and returned in the carriage to the house where he was staying. From the time of his return from the trip to the works he continued to grow worse, and four days after that he died. The cause of action is founded upon what occurred on the morning of the ninth of March. The court in its instructions to the jury, stated the charges of negligence as follows: "That on or about the 9th of March, 1893, said defendant caused the said H. E. Kerr, now deceased, to be exposed, by taking him away from the house where he was lying sick at a time when he was unable to judge himself as to his going out, and was unfit to be removed; that such removal was done by the agents and servants of the defendants; and that it was done in so negligent and reckless a manner as to cause the death of said H. E. Kerr." A number of witnesses were examined as to the condition of the deceased on the morning when the message was sent to Kerr by the superintendent of the company; and it appears that he had been under the care of a physician for several days before that time, but up to the eighth day of March he went to the physician's office for treatment. The physician advised him to remain in his bed, and the trip to the waterworks was in violation of this order. The contention of plaintiff's counsel is that the defendant's messenger who went after the deceased with the carriage knew of the physician's order, and, in utter disregard thereof, took the patient from the house, and, by reason of the exposure, death ensued.

We will not set out the testimony of the witnesses. There is a dispute as to the correctness of the appellant's abstract, and we have examined the transcript to

some extent. A fair consideration of all the evidence in the case leads the mind to a very satisfactory conclusion that there was no ground upon which to found a verdict for the plaintiff. There is not the least semblance of evidence that the messenger sent for Kerr used any force or even persuasion to induce the sick man to go to the waterworks. He delivered the message verbally in the same terms in which it was communicated to him; and there is no evidence from which any jury or court would be justified in finding that the deceased was not perfectly capable of deciding whether he should make the journey to the works in the carriage.

The jury, in answer to a special interrogatory, found that before H. E. Kerr went to the waterworks plant on March 9, 1893, the water company had no notice or knowledge that Kerr was not reasonably in possession of his mental faculties. This finding was in strict accord with all the evidence on that question, and any other answer to the special interrogatory would have been so manifestly without support as to require that the finding should be peremptorily set aside.

II. We need not further discuss the facts; and the instructions given to the jury demand no special consideration, for the reason that the counsel for appellee practically concedes that a new trial should be granted. We find the following language in the argument of counsel for appellee: "The appellee, in the court below, won by force of the strength of her case over the grossest injustice of the trial court;" and "the appellee, without conceding there was any unjust ruling of the court, or disregard of evidence against her by the jury, has been, and is now, ready to consent to a new trial. This offer was made in open court, at the coming in of the verdict, and is now renewed. An examination of the rulings on evidence and instructions will show that

a verdict against appellee should have been set aside as against the law and evidence. Subject to the above offer for a new trial, the appellee respectfully submits, no error in her favor was committed by either judge or jury."

. III. But appellant is not content with a mere reversal. It presented a motion for judgment on the special finding of the jury, notwithstanding the general verdict for the plaintiff. The motion was overruled. In view of the fact that the special finding is not of itself conclusive of the rights of the parties, and, when taken in connection with the facts admitted by the pleadings, is not sufficient to defeat the right of recovery, we think we ought not to interfere with the order overruling the motion. The rule in regard to such a motion is stated in *Conners v. Railway Co.*, 71 Iowa, 490 [32 N. W. Rep. 465], as follows: "To entitle a party to a judgment on special findings against a general verdict in favor of his adversary, the special findings must be inconsistent with the general verdict, and must of themselves, or when taken in connection with the facts admitted by the pleadings, be sufficient to establish or defeat the right of recovery." And see, also, *Lamb v. Society*, 20 Iowa, 127; *Hardin v. Branner*, 25 Iowa, 364; *Bills v. Ottumwa*, 35 Iowa, 107; *Crouch v. Deremore*, 59 Iowa, 43 [12 N. W. Rep. 759], *Hammer v. Railroad Co.*, 61 Iowa, 56 [15 N. W. Rep. 597]. And, if the general verdict is inconsistent with the instructions to the jury and the special findings, a motion to set aside the general verdict and for judgment on the special findings should be sustained. *Krauskopf v. Krauskopf*, 82 Iowa, 535 [48 N. W. Rep. 922]. It is true that in *Martin v. Widner*, 91 Iowa, 459 [59 N. W. Rep. 345], it is said that, in determining the question as to a conflict between the special findings and a general verdict, "other undisputed facts could be considered by the court in passing on the motion." That language was

used in connection with the facts as shown by the pleadings, and which were specially found by the special verdict.

IV. In conclusion, we do not deem it inappropriate to say that, upon the most favorable consideration of every fact testified to by the plaintiff's witnesses upon the question of the defendant's negligence, there was an utter failure to show that any right of action existed. In the case of *Gores v. Graff*, 77 Wis. 174, 46 N. W. Rep. 48, where an action was brought against an attending surgeon for negligence which caused the death of his patient, it was held that "there can be no recovery unless it is reasonably probable that Olson (the patient) would have lived had Dr. Graff treated him properly, and the existence of such reasonable probability must be proved; that is, facts and circumstances must be proved sufficient to bring conviction to a reasonable mind, without resorting to mere conjecture or uncertain and inconclusive inferences or bare possibilities that the surgeon's neglect of duty was the proximate cause of the death of his patient." See, also, *Trapnell v. City of Red Oak Junction*, 76 Iowa, 744 [39 N. W. Rep. 884]; *Stager v. Railway Co.*, 119 Pa. St. 70 [12 Atl. Rep. 821]; *Sorenson v. Pulp Co.*, 56 Wis. 338 [14 N. W. Rep. 446]; *Dunbar v. McGill*, 64 Mich. 676 [31 N. W. Rep. 578]. Applying this rule to the evidence in the case at bar, there is not a fact testified to, even by the physician in charge, showing that the death of the deceased resulted by reason of the trip to the waterworks. There is nothing but the merest surmise, bare probability or conjecture, and inconclusive inferences, which are wholly insufficient to authorize a recovery. The judgment of the superior court is *reversed*.