# Richmond

## Northern Virginia Power Company v. Susie V. Bailey, Administratrix, &c.

December 1, 1952.

Record No. 3959.

Present, Eggleston, Buchanan, Miller, Smith and Whittle, JJ.

The opinion states the case.

*J. Sloan Kuykendall, Henry H. Whiting* and *Wayne A. Whit-ham,* for the plaintiff in error.

*J. Lynn Lucas, Joshua L. Robinson* and *William W. Lowell,* for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

Susie V. Bailey, administratrix of the estate of Jesse J. Bailey, deceased, sued the Northern Virginia Power Company, to recover damages for the alleged wrongful death of her husband.

The notice of motion for judgment charged that plaintiff's decedent, a laborer in an apple orchard operated by H. F. Byrd, Incorporated, met instant death by electrocution when a metal ladder, 24 feet in length, carried by him, came in contact with the electric wires of the power company. The notice further charged that the defendant knew or was charged with knowledge that the employees of the orchard used metal ladders in their work, and that they carried the ladders in an upright position; that notwithstanding this knowledge the defendant negligently maintained an electric distribution system through the orchard, carrying 2300 volts; that the wires were maintained at a height and in a manner which were hazardous and unsafe for decedent and other employees of the orchard company; that the defendant negligently failed to raise the wires to a height which would be safe, and that the wires were not otherwise insulated. It was alleged that as a proximate result of this negligence a high voltage wire was caused to come in contact with the ladder carried by decedent, causing his instant death.

The power company filed grounds of defense denying the allegations of negligence. In addition it filed a plea charging contributory negligence on the part of plaintiff's decedent, which it alleged was a proximate, contributing cause of death, to which a replication denying contributory negligence was filed.

The trial of the case before a jury resulted in a verdict in favor of plaintiff. A motion to set the verdict aside was overruled and judgment was entered thereon. To this ruling we granted the power company a writ of error and *supersedeas*.

Twenty-seven assignments of error are relied upon by the power company. These can be treated under five headings. The first challenges the sufficiency of the evidence to allow the jury to find the power company guilty of negligence.

Where we have, as here, a jury's verdict in favor of the plaintiff, which verdict has been approved by the trial judge, we must view the evidence in a light most favorable to the plaintiff. *Neal* v. *Spencer,* 181 Va. 668, 26 S. E. (2d) 70; *Clayton* v. *Taylor,* 193 Va. 555, 557, 69 S. E. (2d) 424, 426.

The evidence disclosed that at the time of Bailey's death, and for many years prior thereto, the Byrd orchard had occupied a large tract of land along Senseney road, near Berryville. Since 1936 the power company had operated a high voltage electric distribution line which was constructed over a right of way ac-

quired from H. F. Byrd. The right of way extended over the orchard property parallel with and adjacent to the northerly side of Senseney road.

The distribution line consisted of three wires supported on cross-arms affixed to poles spaced approximately 300 feet apart; the two outer wires carried an electric current of 2300 volts; the inner wire was grounded and carried no current. The right of way was not fenced or in any way separated from the road or the orchard. Grass grew along the right of way and throughout the orchard property which extended to the northerly edge of the road.

On the day of the alleged fatal accident, May 24, 1949, and for several days prior thereto, plaintiff's decedent and other laborers in the orchard were engaged in thinning trees. This was a process of removing excess apples from the trees in which "the thickest ones of them and the smallest ones" were clipped off the branches.

To perform the work the orchard company furnished the laborers with ladders, some made of wood and some of metal. Bailey had been furnished a 24-foot aluminum ladder, weighing 37 pounds. He had been instructed by Mr. Wood, the foreman, to carry the ladder in an upright position when moving it from tree to tree.

On the day of the alleged accident Bailey and other orchard workers reported for work at 7:00 a.m., and under orders from the foreman they took up their work where they had left off the day before. When the work in this block of trees neared completion (within an hour) the foreman directed the workers to move forward to another block of trees located a few rows to the east on the same side of Senseney road.

Bailey had not completed thinning his tree, and the foreman directed Mrs. McDonald and her son to help him finish the work. While this work was being completed the foreman and the other workers, including Mrs. Bailey, moved to the other block of trees. Mrs. Bailey walked along a wagon trail leading from Bailey's tree down a grade to the clearing between the first row of trees and the northerly side of the electric wires. She continued along the orchard property on the side of the power line to the new block of trees three or four rows to the east.

Mrs. McDonald testified that when Bailey finished his work he removed his rubber boots, changed to walking shoes, lifted his

ladder upright and walked with it in that position down the wagon trail, following the general course taken by his wife. Mrs. McDonald followed Bailey but turned back to get a jacket that had been left on a tree. When she again came in sight of Bailey, "he was standing with his ladder up, and he just fell. It was so quick." The electric wires were right over where he fell; they were sagging "right where he was". She testified "the ladder was right up into the wires, and when I looked, I seen him, he just fell so quick."

Mrs. McDonald called the foreman who came running to the scene with the other workers. In the meantime she removed the ladder from Bailey's face. "He drawed up his arms and legs all up—drawed one of his legs up." Bailey turned black. "He made two or three moans * * * he didn't talk any."

Foreman Wood testified that the ground around where Bailey fell was wet.

The evidence disclosed that the distribution line was 24 feet from the ground and that the closest wire measured on a horizontal plane between lines projected vertically from the nearest wire to the closest branch of a tree was 12 feet.

The evidence further disclosed that the power company had been previously notified that an orchard worker by the name of Buddy Pierce was involved in an accident in the orchard when his metal ladder came in contact with its electric wires. The Pierce accident happened about eight months prior to the alleged Bailey accident, and the company had done nothing to remedy the situation except "they came out with posters and little pamphlets cautioning the people about (not) to use metal ladders near a power line." No change was made in the wires, they were "exactly the same."

The power company contends that no negligence on its part has been proven. The company further relies upon the "unbending test" rule and argues that evidence of experts introduced in its behalf to the effect that the distribution line was erected in accordance with approved practices and at a height greater than that required by the National Electrical Safety Code is, in the absence of evidence to the contrary, conclusive as to the lack of negligence on its part.

The company further contends that the evidence of its expert witnesses negatives any obligation on its part to have its wires covered with insulating material.

■ We agree that this latter duty is not absolute if the company maintains its wires at such height that it is not reasonable to foresee or anticipate that people will come in contact with them. 29 C.J.S., Electricity, § 42, page 580; 18 Am. Jur., Electricity, §79, page 491.

In the instant case the facts and surrounding circumstances make the "unbending test" rule inapplicable. Here we have this high voltage distribution system traversing an apple orchard which was in existence when the company acquired the easement for the distribution line. The very nature of the orchard business requires that the trees be properly cared for. The power company knew or was charged with the knowledge that the trees in the orchard extended higher than the wires of the distribution system; it knew that apple culture required that the trees be sprayed periodically; that they be pruned; that the trees be thinned and that the fruit be harvested. The company was also charged with knowledge that in order to perform these various operations certain tools and equipment which would reach to the top of the trees had to be employed; that spray equipment, pruning knives, ladders and other equipment were necessary for the proper care of the orchard.

In the instant case, before the alleged fatal accident, the power company had been warned of a similar, though not fatal, accident. The company knew that workers in the orchard were exposed to these high voltage wires and it was their duty to keep the wires properly insulated. *Danville* v. *Thornton,* 110 Va. 541, 66 S. E. 839; *Appalachian Power Co.* v. *Hale,* 133 Va. 416, 113 S. E. 711.

Those engaged in the distribution of electricity are required to use a high degree of care,—care commensurate with the danger involved,—in order to prevent injury to others. *Trimyer* v. *Norfolk Tallow Co.,* 192 Va. 776, 783, 66 S. E. (2d) 441; *Jeffress* v. *Virginia Ry., etc., Co.,* 127 Va. 694, 714, 104 S. E. 393, 399; *Haywood* v. *South Hill Mfg. Co.,* 142 Va. 761, 128 S. E. 362; 29 C.J.S., Electricity, § 39, page 575.

■ The question of the power company's negligence or lack of negligence was a jury question in this instance. The jury had a right to conclude that the power company could have reasonably foreseen that laborers in the orchard might be injured through no negligence on their part, and that a reasonably pru-

dent person under the circumstances should have insulated the wires by space or otherwise so as to safeguard the danger.

The second question posed by the defendant is: Was the evidence legally sufficient to allow the jury to find that Bailey died as a result of electrocution and that the proximate cause of his death was the negligence of the defendant?

The rule stated in *Clayton* v. *Taylor, supra,* serves to govern us here: "Conflicts in the testimony and all just inferences that may be drawn from the evidence have been resolved by the jury in Taylor's favor and we must view the evidence in the light most favorable to him."

Bailey was in good health. He was at work in the orchard, carrying an aluminum ladder weighing 37 pounds. The ladder was in an upright position and was 24 feet long. He was directly beneath defendant's 2300 volt wires which were generally 24 feet above the ground. He was wearing leather shoes. The wires sagged directly at the point he was seen to fall. Mrs. McDonald said the ladder was "right up into the wires" when he fell. It happened "so quick". He did not speak but moaned several times. He turned black and "drawed his arms and legs all up". The ground was wet where he fell, and several dark marks were found on the ladder near the narrow end. He was dead when the doctor examined him.

Certainly a just inference which the jury could reasonably draw from this evidence was that Bailey, standing on wet ground, was electrocuted as a result of the metal ladder coming in contact with the wire.

Frequently material facts are not proven by direct evidence. A verdict may be properly based upon reasonable inferences drawn from the facts. If facts are present from which proper inferences may be drawn this is sufficient.

"The triers of fact may draw all reasonable and legitimate inferences and deductions from the evidence adduced before them; indeed it is their duty to make, and give consideration to, all inferences and deductions which may properly be drawn." 32 C.J.S., Evidence, § 1044, page 1129; *Wood* v. *Southern R. Co.,* 104 Va. 650, 655, 52 S. E. 371.

As was said by Mr. Justice Gregory in *Bly* v. *Southern R. Co.,* 183 Va. 162, 174, 31 S. E. (2d) 564, 172 A. L. R. 584 (opinion adhered to on rehearing, 183 Va. 406, 32 S. E. (2d) 659, 172 A. L. R. 584): "The further point for decision is whether the

jury could have found that there was causal relation between the negligence of the defendant and the death of the plaintiff's decedent. In the absence of evidence, we must assume that he was free from negligence, and that he was killed while in the performance of his duties.

\* \* \* \* \* \*

"In the case at bar the facts have been established by circumstantial evidence which is not uncertain or indefinite, and they do not rest upon presumption. It is not necessary to base an inference upon an inference in order to deduce negligence from the circumstances. A legitimate inference of want of due care on the part of the defendant can reasonably be drawn by a jury from the established circumstances. It is not necessary that the circumstances establish negligence as the proximate cause with such certainty- as to exclude every other possible conclusion. It is not necessary to negative every possibility that the accident occurred in some extraordinary manner which would relieve the defendant. Often this would be impossible. All that is required is that a jury be satisfied with proof which leads to a conclusion with probable certainty where absolute logical certainty is impossible."

As was said in *Sargent* v. *Massachusetts Acci. Co.,* 307 Mass. 246, 29 N. E. (2d) 825: "The burden of proof that is on the plaintiff in this case does not require him to establish beyond all doubt, or beyond a reasonable doubt, that the insured died from accidental injury. \* \* \* He must prove that by a preponderance of the evidence. \* \* \* The weight or preponderance of evidence is its power to convince the tribunal which has the determination of the fact, of the actual truth of the proposition to be proved. After the evidence has been weighed, that proposition is proved by a preponderance of the evidence if it is made to appear more likely or probable in the sense that actual belief in its truth, derived from the evidence, exists in the mind or minds of the tribunal, notwithstanding any doubts that may still linger there." See also, *Young* v. *New York, etc., R. Co.,* 273 Mass. 567, 570, 174 N. E. 318; *Dunbar* v. *McGill,* 64 Mich. 676, 683, 31 N. W. 578; *Hoyt* v. *Danbury,* 69 Conn. 341, 348, 37 A. 1051; *Pullman Palace-Car Co.* v. *Adams,* 120 Ala. 581, 599, 24 So. 921, 45 L. R. A. 767, 74 Am. St. Rep. 53; *Livanovitch* v. *Livanovitch,* 99 Vt. 327, 131 A. 799.

We conclude that this issue presented a jury question and

that the jury had a right to exclude the inference of death from a natural cause.

The third point stressed by the defendant is that Bailey was guilty of contributory negligence as a matter of law and that his negligence was a proximate contributing cause of his death. It is argued that the danger was apparent and Bailey was charged with notice thereof, and also that he had been warned of the danger of working around the high tension wires. The company further contends that Bailey was negligent in carrying his metal ladder in an upright position when not working on trees.

It may be inferred that the warning signs and oral warnings relied upon by the defendant were those given in 1948 after the Pierce accident. There is a conflict in the evidence as to whether Bailey ever saw the posted signs or heard the oral warnings. The jury could infer that he never saw or heard any warning.

Dealing with the question of contributory negligence, the able trial judge had this to say: "His work required him to move his ladder to another section of the orchard on the same side of the wires. The trees were close together where he had been working and from whence he departed on his journey down a path closely guarded by the trees approaching the 12 foot strip between the wire and the row of trees paralleling the wire. The plaintiff is entitled to all reasonable inferences to be drawn from the circumstances proven. The jury would have been justified in concluding that he planned to turn eastwardly to his left when he reached the 12 foot strip. At the point where the path reached the 12 foot strip the grade was slightly downward and the grass was wet. He might have planned to lower his ladder and carry it in a horizontal position when he arrived at the 12 foot strip, but slipped, staggered or stumbled toward the wire when he approached this point, and was thereby unintentionally brought into a position where the ladder came in contact with the wire.

"Irrespective of whether he had or was charged with knowledge of the wire, if we accept this theory it could hardly be said that the same thing might not have happened to a man of ordinary prudence under the circumstances. Rather, in my opinion, the accident would be the result of a misadventure which, although, of course, it could have been foreseen by the

exercise of a high degree of care, might not have been anticipated by a man of *ordinary* prudence.

"A person is not chargeable with foreseeing untoward events beyond his control. Slipping, falling or stumbling are usually classed as unforeseeable accidents and a person is not charged with the duty to foresee them unless the danger is reasonably apparent."

The legal presumption is that Bailey was not negligent. The burden of establishing contributory negligence was upon the power company. We cannot say that Bailey was guilty of contributory negligence as a matter of law. The evidence presented a question to be answered by the jury. *Appalachian Power Co. v. Hale, supra.*

Defendant assigns as error the giving of certain instructions for the plaintiff and the refusal of others for the defendant. We have carefully considered the instructions given and they abundantly cover every phase of the case. Certainly no substantial right was denied the defendant, and there is no merit in this assignment.

We have considered the assignment dealing with the admissibility of evidence and find no merit therein.

Lastly, the defendant objects to the form of the jury's verdict, which reads: "We, the jury, find the defendant guilty of negligence and award the plaintiff, Mrs. Susie V. Bailey, ten thousand dollars."

The contention here is that this is a special verdict in that it contains the finding of the jury upon only one of the issues involved. It is argued that the verdict does not say that the defendant's negligence was the sole proximate cause of Bailey's death, and that it does not respond to the issue raised by the plea of contributory negligence.

No objection was raised to the form of the verdict when it was read in open court. The trial judge states in his opinion, "* * * it was not until some weeks later that the verdict was attacked on this ground * **".

If there was doubt as to the meaning of the jury's verdict the question should have been raised by the court or counsel before the jury was discharged, thus permitting the verdict to be corrected. We see no substantial objection to the verdict in this instance. Clearly that portion finding the defendant guilty of negligence is mere surplusage. Under the court's instructions

the jury could not have found for the plaintiff unless defendant's negligence was the sole proximate cause of decedent's death,—the instructions so told the jury,—and they also told the jury that the plaintiff could not recover if Bailey was guilty of contributory negligence.

Chief Justice Hudgins, in *Cape Charles Flying Service* v. *Nottingham,* 187 Va. 444, 454, 47 S. E. (2d) 540, 545, quoted with approval from *Peters* v. *Johnson,* 50 W. Va. 644, 41 S. E. 190, 88 Am. St. Rep. 909, 57 L. R. A. 428, as follows: " 'Verdicts are to be favorably construed, and, if the point in issue is substantially decided by the verdict, it is good, and when the meaning of the jury can be satisfactorily collected from the verdict, upon the matters involved in the issue, it ought not to be set aside for irregularity or want of form in its wording.' "

We conclude that the verdict clearly indicates the jury's intention to find for the plaintiff and there is no merit in this assignment.

We are of opinion that the judgment of the trial court should be affirmed and it is so ordered.

*Affirmed.*