## CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Beverly Cromer
and L. Allison Cromer

   v.

Johnson Village, L.L.C.

September 2, 2005

Case No. (Law) CL04-37

By Judge Edward L. Hogshire

In this wrongful death action, Johnson Village, L.L.C., has filed a Motion for Summary Judgment with the Court. Defendant argues three theories in support of its motion: (1) that Defendant possessed no duty to repair and maintain the relevant premises and, therefore, could not have been negligent; (2) that Betty Lee Cromer ("Decedent") was contributorily negligent as a matter of law; and (3) that the inability of Beverly and L. Allison Cromer ("Plaintiffs") to establish with probable certainty that the alleged negligence of Defendant was the proximate cause of Decedent's death is fatal to the claim. Having duly considered the facts and legal argument by both parties, the Court, in accordance with the reasoning set forth below, denies the Motion for Summary Judgment.

*Procedural History*

Plaintiffs, the daughters and administrators of the estate of Decedent, filed a Motion for Judgment under Virginia's wrongful death statute on February 7, 2004, alleging that Defendant, owner of Decedent's home,

was liable for her death on the grounds of negligence, negligence *per se* (alleging a violation of the Statewide Building Code), and gross negligence. Defendant demurred to the claim, which the Court sustained with leave to amend. Plaintiffs filed an Amended Motion for Judgment on May 21, 2004, to which Defendant again demurred. The Court overruled the second Demurrer, and Defendant filed responsive pleadings. On April 28, 2005, at the close of discovery, Defendant filed the Motion for Summary Judgment that is currently before the Court.

## Statement of Facts

Decedent died on November 29, 2003, at her home in Charlottesville as the result of a fall of approximately fifteen feet off the deck on the back of her home. (Plaintiff's Amended Motion for Judgment [hereinafter Motion], ¶¶ 1, 12.) Plaintiffs contend that, for the nearly four years during which Decedent had lived at the location, she had consistently complained to Defendant's property manager about the deteriorating condition of the deck's railings. (Motion, ¶ 9.) Despite her alleged requests, however, Defendant refused to take action to repair the railings. (Motion, ¶¶ 10-11.) Plaintiffs now allege that, on the day of the accident, the rotten wooden deck railings gave way, and Decedent fell, hit her head on the rocks on the ground below, and was found suspended by her clothing on one or more steel pipes located below the deck. (Motion, ¶¶ 12-13.) There were no eyewitnesses to this incident. Although Decedent's daughter Allison was at her mother's home at the time the accident occurred, Plaintiffs admit that they have no direct knowledge of Decedent's going onto the deck and do not know the specific cause of the accident. (Plaintiffs' Response to Requests for Admissions, ¶¶ 5-6, 14.) It is known that Decedent had placed sweaters on the furniture located on the deck on the day of the accident, and Plaintiffs suggest that she may have fallen while on the deck tending to the sweaters. (Plaintiffs' Response to Requests for Admissions, ¶¶ 5-6.) Emergency crews were summoned as soon as Decedent was discovered by her daughter, and she was pronounced dead at the scene. (Motion, ¶ 14.)

## Questions Presented

1. Whether certain provisions of the Virginia Residential Landlord and Tenant Act apply to this case and create a duty on the part of Defendant to repair and maintain the deck railings.

2. Whether Decedent was contributorily negligent as a matter of law.

3. Whether the circumstantial evidence of negligence as adduced in pre-trial discovery is so deficient as to mandate an award of summary judgment on behalf of the Defendant.

### Standard of Review

A trial court may sustain a motion for summary judgment only if no material fact is genuinely in dispute. *See* Rules of the Supreme Court of Virginia, 2:21 (2004); *Ciejek v. Laird*, 238 Va. 109, 113 (1989). In other words, in order for the Court to grant summary judgment, the only disagreement between the parties must concern a pure matter of law, and Defendant, as the moving party, must be entitled to prevail on the relevant legal issue(s). *See Carwile v. Richmond Newspapers, Inc.*, 196 Va. 1, 5 (1954). Furthermore, in considering the motion, the Court is required to draw all inferences in the light most favorable to Plaintiff, as the non-moving party, unless such inferences would be "strained, forced, or contrary to reason." *Slone v. General Motors Corp.*, 522 Va. 520, 522 (1995), quoting *Bloodworth v. Ellis*, 221 Va. 18, 23 (1980).

### Analysis

### 1. Duty to Repair and Maintain Premises

Defendant argues that Decedent possessed the exclusive duty to repair and maintain the deck railings and that Defendant is therefore free from any liability potentially arising out of the tenant's fatal injury. It points to the clause in the lease executed between the two parties on December 3, 1999 (hereinafter "Lease") which states: "Tenant shall maintain the premises by performing the following. . . . Complying with all obligations primarily imposed upon tenants by applicable provisions of building and housing codes materially affecting health and safety."[1] Lease 4(e)(3). Defendant then cites *Wohlford v. Quesenberry*, 259 Va. 259 (2000), in which the Virginia Supreme Court held that the Uniform Statewide Building Code (BOCA), Va. Code § 36-97, *et seq.* (under which Plaintiffs allege negligence per se), has *not* modified "the common law rule that a tenant who has exclusive possession and control of a premises,

---

[1] However, the lease also clearly states: "Tenant shall be responsible for repairs *required by reason of the negligence by the Tenant*." Lease 4(e)(2) (emphasis added).

absent an agreement to the contrary, is responsible for its maintenance and repair." *Wohlford*, 259 Va. at 821 (holding that, where an oral lease existed between the landlord and tenant that did not stipulate who was to maintain the premises, because the tenant was the person in control of the premises, not the landlord, the tenant was the defined "owner" and therefore possessed the maintenance and repair responsibilities). *See also Payton v. Rowland*, 208 Va. 24 (1967); *Oliver v. Cashin*, 192 Va. 540 (1951).

Plaintiffs argue that, notwithstanding the Lease provision and holding of *Wohlford*, the Virginia Residential Landlord and Tenant Act ("VRLTA"), Va. Code § 55-248.2 *et seq.*, controls and creates a statutory warranty of habitability that cannot be contracted away in a lease.[2] A comparison of pertinent provisions of the VRLTA and the Lease reveals that the two documents are nearly identical in many important respects, including the requirement, cited above, that the tenant comply with all statutorily-imposed obligations affecting health and safety. *See* Va. Code § 55-248.16(A)(1). The VRLTA also places mandates upon the landlord, including instructions that he: "Comply with the requirements of applicable building and housing codes materially affecting health and safety," and "Make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition." Va. Code § 55-248.13(A)(1)-(2). Plaintiffs note that subsection (C) of that Code section explicitly allows the landlord and tenant to agree in writing that the tenant perform some of the duties otherwise reserved for the landlord, Va. Code § 55-248.13(C), but insist that these two responsibilities cannot be contracted away. Plaintiffs conclude that, with respect to a tenant's statutory obligations to keep the premises in a fit and habitable condition, the VRLTA creates an implied warranty of habitability that a landlord cannot avoid through a lease provision.

Plaintiffs' interpretation of the VRLTA's implied warranty of habitability appears to have merit. The statute requires the Defendant to "do whatever is necessary to put and keep the premises in a fit and habitable condition." Va. Code § 55-248.13(A)(2). Here there is a lease

---

[2] Defendant is subject to the VRLTA because, as demonstrated by Plaintiffs' "Exhibit 1" (a portion of the City of Charlottesville's real estate assessment records), it owns more than four single-family residences subject to a rental agreement. *See* Va. Code § 55-248.5(A)(10). Furthermore, Plaintiff asserts that Herb Fischer, Defendant's property manager, testified at deposition that Defendant owns more than ten rental units in Charlottesville.

446

provision stating that Decedent was only to make repairs caused by her own negligence. There is little doubt that the deteriorated deck railing could be seen as a major structural flaw not commonly remedied by tenants, leaving solely with the Defendant the duty to maintain and repair the railing. *See Deem v. Charles E. Smith Management, Inc.*, 799 F.2d 944 (4th Cir. 1986); *see also Gumenick v. United States*, 213 Va. 510 (1973) (holding that it is the duty of apartment owners to maintain the apartments' porches and railings in a reasonable state of repair). Under these facts, the lease clause upon which Defendant relies, mandating that Decedent comply "with all obligations primarily imposed upon tenants by applicable provisions of building and housing codes materially affecting health and safety," is simply insufficient to shift the duty to Decedent.

Contrary to Defendant's assertions, the fact that Plaintiffs did not bring suit under the VRLTA, *see* Va. Code § 55-248.40, does not render that statute inapplicable and automatically impose the common law *caveat emptor*-style rule. The VRLTA is valuable for the purposes of defining the standards of care respectively imposed upon the parties even under a common law negligence action. *See Guy v. Tidewater Investment Properties*, 41 Va. Cir. 218, 225 (Norfolk 1996). Furthermore, the holding of the *Wohlford* case did not implicate the VRLTA at all; as Plaintiffs correctly point out, the landlord may have been exempt from its provisions entirely. In addition, that case concerned an oral lease in which *no agreement whatsoever* had been made with respect to the duty to repair and maintain the premises. In the instant matter, it appears that the VRLTA controls, and the parties have explicitly mentioned certain duties of repair and maintenance within the Lease. Therefore, the common law default does not automatically govern with respect to the BOCA Code as it did in *Wohlford*.

## 2. Contributory Negligence

Defendant next argues that the case should be dismissed because no genuine issue of material fact exists with respect to Decedent's alleged contributory negligence. The law is clear in Virginia that, "in a negligence action, where there are no eyewitnesses to an accident, it will be presumed, in the absence of evidence to the contrary, that the deceased used ordinary care and caution for his own safety, which presumption will permit a recovery, if it be shown that defendant was negligent." *Charlottesville Music Center, Inc. v. McCray*, 215 Va. 31, 37 (1974) (holding that, where there were no eyewitnesses to the decedent's fall

down a cargo hoist shaft, the plaintiff was entitled to the due care presumption); *see also Hagan v. Hicks*, 209 Va. 499, 505 (1969); *Hot Shot Express, Inc. v. Brooks*, 264 Va. 126, 136 (2002). However, when the defendant produces evidence tending to show that the decedent failed to act with due care, the presumption afforded the plaintiff no longer applies. *Id.*; *Armstrong v. Rose*, 170 Va. 190, 204 (1938) ("When evidence comes in, the presumption goes out.").

Furthermore, in asserting a contributory negligence defense, the burden is on the defendant to establish by a preponderance of the evidence that the plaintiff failed to act as a reasonable person would have acted for his own safety under the circumstances and that such deviation from the appropriate standard of care was the proximate cause of the plaintiff's injury. *See, e.g., Artrip v. E. E. Berry Equip. Co.*, 240 Va. 354, 358 (1990). Resolution of the question of contributory negligence is generally left to the province of the jury. *See Kelly v. Virginia Electric & Power Co.*, 238 Va. 32, 39 (1989). A jury is given a wide degree of latitude in reaching its verdict and may base its decision upon inferences reasonably drawn from the facts presented in the case. *See Northern Virginia Power Co. v. Bailey*, 194 Va. 464, 470 (1952). However, when the facts are so clear that reasonable people could not disagree as to their meaning, the trial court may find contributory negligence as a matter of law. *Kelly*, 238 Va. at 39; *Stevens v. Ford Motor Co.*, 226 Va. 415, 421 (1983).

In *Bailey*, the decedent was an orchard worker who was carrying his ladder upright as he walked downhill through wet grass. 194 Va. at 467-68. The ladder struck an overhead power line, electrocuting him. *Id.* at 468. Although the decedent was charged with having knowledge of the dangers of power lines around which he worked, the Court nevertheless affirmed a verdict for the plaintiff, stating: "The jury would have been justified in concluding that . . . he might have planned to lower his ladder and carry it in a horizontal position . . . but slipped, staggered, or stumbled toward the wire when he approached." *Id.* at 472. This, the Court held, was sufficient for the jury to find ordinary prudence on the part of the plaintiff and therefore an absence of contributory negligence. *Id.* at 472-73. *See also Paytan v. Rowland*, 208 Va. 24, 27 (1967) (holding that, where the plaintiff knew that at least part of the porch was in poor condition, but it provided the only practicable access to the back yard, whether or not she was contributorily negligent in walking across it was a jury question); *Chesapeake & Ohio Ry. v. Rowsey's Admr.*, 108 Va. 632 (1908) ("[K]nowledge of the unsafe character of a structure, while alone is not sufficient to establish contributory negligence, is a circumstance to be

considered by the jury along with other facts tending to establish that defense.").

The Virginia Supreme Court in *Kelly* held that a professional painter of ordinary intelligence who moved an aluminum ladder into contact with an uninsulated overhead power line was contributorily negligent as a matter of law. 238 Va. at 41 ("[N]o direct or reasonable inferences may properly be drawn from the evidence as a whole sustaining the conclusion that the plaintiff was free of contributory negligence.") The Court distinguished *Bailey* by noting that, in that case, the plaintiff had been walking downhill on wet grass immediately before his injury, which allowed the jury to make a reasonable inference that he slipped or stumbled. *Id.* at 42. No such facts were present in *Kelly*, and the court, placing emphasis on the fact that the plaintiff himself testified at trial, concluded that "[a] jury is not permitted to infer in the complete absence of other proof that a plaintiff stumbled when he positively testified that he did not know whether or not he stumbled." *Id.*

In the case at bar, the issue of contributory negligence is a jury question. First, Plaintiffs are afforded the presumption that Decedent acted with ordinary care for her own safety. As was the case in *Charlottesville Music Center*, Decedent fell to her death in the presence of no eyewitnesses and without the benefit of other evidence establishing the circumstances of the fall. Defendant's arguments that other evidence does in fact exist are without merit. Defendant first submits that Plaintiffs admitted in their Motion for Judgment that Decedent knew of the unsafe condition of the deck prior to the accident, which constitutes evidence that she was not exercising ordinary care in walking onto it. However, Plaintiffs rightly point out that in their Amended Motion for Judgment, they clarified their position by alleging only that Decedent knew of the poor condition of the deck *railings*. In drawing inferences in the light most favorable to Plaintiffs, the Court concludes that a jury could find that Decedent was not aware of any problems with the structure of the deck as a whole. Defendant also maintains that Plaintiffs' speculation that Decedent was on the deck in order to remove clothing hanging on furniture, positioned in very close proximity to the defective railing, effectively rebuts the due care presumption. However, inferences as to Decedent's location and conduct on the deck cannot be properly categorized as "evidence" sufficient to overcome the presumption of due care.

It follows that Decedent cannot be found contributorily negligent as a matter of law. According to the *Paytan* and *Rowsey* cases, cited above,

knowledge of an unsafe condition may be relevant to a jury's ultimate determination of contributory negligence, but is not independently sufficient to find a lack of due care as a matter of law. Likewise, while, in this case, Decedent knew that the deck railing was faulty, reasonable people could disagree as to whether a prudent person would be negligent in stepping onto the deck and (presumably) approaching its outer edge. Defendant additionally argues that *Kelly* controls in its holding that a jury may not infer, in the complete absence of evidence, unforeseeable accidents that would tend to militate against finding contributory negligence. *Kelly* is distinguishable, however, because, in that case, the plaintiff survived the incident that gave rise to the litigation and testified at trial that he did not know whether or not he came into contact with the power line by slipping or stumbling. In this case, the presumption of due care operates for the very reason that Decedent's voice has been silenced and she is *unable to testify* as to the occurrence of any unforeseen accidents. All of these factors taken together, in conjunction with the requirement that the Court draw all inferences in the light most favorable to Plaintiffs, compel the conclusion that Defendant has not demonstrated, at least at this stage of the proceedings, that reasonable people could not disagree as to the existence of contributory negligence.

### 3. Proximate Cause

In Virginia, "the burden is on the plaintiff to produce evidence of preponderating weight from which the trier of fact can find that the defendants were guilty of negligence which was a proximate cause of the event resulting in damage." *Lawrence v. Snyder*, 229 Va. 139, 142 (1985), citing *Cooper v. Whiting Oil Co.*, 226 Va. 491, 495 (1984); *Sneed v. Sneed*, 219 Va. 15, 17 (1978). In *Sneed*, the decedent, who was driving a car with her children inside, inexplicably steered off the road and crashed. The injured children brought suit against their mother's estate, and, in affirming a judgment in favor of the defendant, the Supreme Court stated: "The plaintiff must show why and how the accident happened. And if the cause of the accident is left to conjecture, guess, or random judgment, the plaintiff cannot recover." 219 Va. at 17. The Court further noted that the evidence must "show more than that the incident resulted from one of two causes, for one of which defendant is responsible and for the other of which she is not."*id.* at 18.

In *Bly v. Southern Ry.*, 183 Va. 162 (1944), the decedent was a railroad employee who fell from a bridge at night, outside of the presence

of witnesses, while conducting a switching operation. The jury returned a verdict for the plaintiff, which the circuit court set aside. On appeal, the Supreme Court reversed, stating: "It is not necessary to negative every possibility that the accident occurred in some extraordinary manner which would relieve the defendant. . . . All that is required is that a jury be satisfied with proof that leads to a conclusion with probable certainty where absolute legal certainty is impossible."*id.* at 176.

As has been articulated above, Plaintiffs have adduced facts supporting a claim of negligence on the part of Defendant in the failure to repair the deteriorated deck railings. *See Deem*, 799 F.2d 944; *Gumenick*, 213 Va. 510. The issue of causation is admittedly a much closer question, but, by drawing all inferences in the light most favorable to Plaintiffs and applying the presumption of due care afforded the Decedent in the absence of eyewitness testimony, it becomes apparent that Plaintiffs have proffered evidence sufficient to take the issue outside of the realm of speculation. There remains the possibility that Decedent was the victim of foul play or to some other intervening cause that could relieve Defendant of liability; but, given the known circumstances surrounding the incident adduced thus far, a jury could find the likelihood of such occurrences to be slight. It is not disputed that Decedent's daughter was inside the house at the time of the subject event. Had there been a struggle resulting from foul play, a jury could find that she would have been alerted to the commotion. The evidence showing Decedent's customary usage of the deck and the location of the sweaters on the day of her fall will allow a jury to make reasonable inferences that would not be the product of unfounded conjecture or guesswork. This is sufficient, for as the Supreme Court noted in *Bly*, it is not the duty of the court to disqualify every scenario that could possibly have led to the injury.

### Conclusion

In accordance with the foregoing analysis, the Court denies Defendant's Motion for Summary Judgment.