PRESENT: Hassell, C.J., Lacy, Keenan, Koontz, Lemons, and Agee, JJ., and Stephenson, S.J.

VALERIE HAMLET, ET AL.

                                              OPINION BY
v.  Record No. 060762   SENIOR JUSTICE ROSCOE B. STEPHENSON, JR.
                                         March 2, 2007
JACKIE L. HAYES, ET AL.

            FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
                    William C. Andrews, III, Judge

     The issue in this appeal is whether the trial court erred in sustaining the defendants' demurrers, holding as a matter of law that the plaintiffs' bill of complaint failed to allege the essential elements of a breach of contract suit that would entitle the plaintiffs to the relief of specific performance.

                                    I

     Valerie Miller Hamlet, L. Raymond Miller, Jr., and Jane Perry (collectively, the Plaintiffs or the Purchasers) filed a bill of complaint against Jackie L. Hayes and Commonwealth Wood Preservers, Inc. (Commonwealth or the Corporation) (collectively, the Defendants), seeking enforcement of the Purchasers' rights under a shareholder agreement dated January 2, 1990 (the Agreement).  The Agreement was attached to the bill of complaint as Exhibit A.

     Both Hayes and Commonwealth filed demurrers to the bill of complaint, contending that the Plaintiffs had failed to state a claim upon which relief could be granted.  The trial court, by an order entered January 20, 2006, sustained the demurrers and

dismissed the Plaintiffs' bill of complaint.  We awarded the Plaintiffs this appeal.

                                II

    This case was decided by the trial court on demurrer; therefore, we review the trial court's decision de novo based upon the facts alleged in the Plaintiffs' bill of complaint, including the documents incorporated therein and made a part thereof.  In so doing, the Plaintiffs are entitled to the benefit of all reasonable inferences that may be drawn from the facts alleged.  See Glazebrook v. Board of Supervisors, 266 Va. 550, 554, 587 S.E.2d 589, 591 (2003).

                                A

    Commonwealth is a closely held corporation, and the Agreement imposes certain restrictions and obligations on its shareholders.  All of the Purchasers and Hayes are shareholders in Commonwealth and are parties to the Agreement, either as direct signatories or as successors-in-interest to signatories.

    Paragraph 1 of the Agreement, entitled "Voluntary transfers of stock," prohibits a shareholder from transferring shares of the Corporation by any means except as provided by the Agreement.  Subparagraph (a) of paragraph 1, entitled "Offer by Shareholder," provides, in pertinent part, that "[a] Shareholder desiring to sell or exchange all or any part of his Shares shall give the Corporation . . . a written offer to sell such Shares

                                2

to the Corporation (the 'Notice')."  Subparagraph (b) of paragraph 1, entitled "Acceptance of Offer," provides, in pertinent part, that the Corporation "may at its option, by written notice to the [selling] Shareholder and other Shareholders . . . , elect to redeem all, or any part, or none of the Shares of the Corporation proposed to be sold or exchanged."  Subparagraph (b) further requires the Corporation to notify the selling shareholder and the other shareholders, in writing within 30 days of receipt of the offer, of the number of shares, if any, the Corporation intends to redeem.  Upon receipt of such a notice from the Corporation, each of the remaining shareholders may purchase his "Proportionate Share" of the shares not being redeemed by the Corporation.

The term "Proportionate Share" is defined, in subparagraph (b), as

> that portion of the shares of the Corporation offered
> for sale or subject to option which the shares of the
> Corporation owned by a Shareholder bear to all the
> Corporation's shares owned by all the Shareholders
> (other than those offered for sale or under option).
> In addition, if any shares of the Corporation offered
> for sale or under option are not purchased by the
> first shareholder entitled thereto, the term
> "Proportionate Share" shall include that portion of
> the shares of the Corporation not purchased by the
> Shareholder first entitled thereto which the shares of
> the Corporation owned by a Shareholder bears to the
> Corporation's Shares (other than those offered for
> sale) owned by all Shareholders other than the
> Shareholder first entitled to purchase.

Subparagraph (b) further provides, in pertinent part, that, "[i]f the Corporation and/or the Shareholders agree to redeem and/or purchase all of the Offered Shares, the Purchase Price shall be equal to the value of the sale or exchange specified in the Notice; however, the terms for payment shall be in accordance with the provisions of Paragraph Numbered 8 of this Agreement."

Paragraph 8, subparagraph (b) of the Agreement applies to the shares that are "purchased by all or some of the remaining Shareholders" and provides that the purchase price shall be paid at closing. Subparagraph (b) further provides, in pertinent part, that "[n]ot less than Twenty Percent (20%) of the Purchase Price shall be paid in cash and the balance shall be paid by the delivery of each Shareholder's negotiable promissory note." Subparagraph (d) of paragraph 8 addresses "Closing" and provides, in pertinent part, that "[t]he Closing of any purchase and sale shall take place at the office of the Corporation at a date designated by the Corporation which shall be not more than thirty (30) nor less than ten (10) days following the date of exercise of the option by the purchaser(s)."

B

Millard M. Davis, a shareholder in the Corporation and chairman of its board of directors, offered to purchase all of Hayes' shares for $700,000 "subject to [the Corporation's]

4

declining to buy [the] shares." Thereupon, Hayes offered his shares to the Corporation by a memorandum dated August 17, 2004, which reads as follows:

> SUBJECT: Sale of Stock
>
> You are hereby notified I have received an offer to sell my 150 shares in Commonwealth Wood Preservers, Inc. for $700,000 to current shareholder, Millard M. Davis, subject to Commonwealth Wood Preservers, Inc. declining to buy my shares.

On the same date, Commonwealth notified its other shareholders, including the Purchasers, that its Board of Directors had voted not to redeem Hayes' shares. Commonwealth further notified its other shareholders, including the Purchasers, that they had "30 days to purchase [their] 'Proportionate Share' of these shares if [they] so desire[d]."

Upon receipt of this notice, the Purchasers gave timely notice to Commonwealth of their intentions to exercise their rights to purchase their proportionate shares of Hayes' stock. After receiving the notices from the Plaintiffs, Davis sent Hayes a memorandum, dated September 17, 2004, purporting to withdraw his offer to purchase Hayes' shares. Hayes acknowledged receipt of the memorandum and wrote thereon, "I withdraw my offer to sell my stock in [the Corporation]." In their bill of complaint, the Plaintiffs stated that they "are ready, willing, and able to perform their obligations in

5

connection with the purchase of Hayes' Shares of the Corporation under the terms of the Agreement."

III

The essential elements of a cause of action for breach of contract are (1) a legal obligation of a defendant to a plaintiff, (2) a violation or breach of that obligation, and (3) a consequential injury or damage to the plaintiff. Caudill v. Wise Rambler, 210 Va. 11, 13, 168 S.E.2d 257, 259 (1969). The Purchasers contend that they sufficiently alleged a cause of action against the Defendants for breach of contract.

The Purchasers contend that Hayes' written notice to the Corporation constituted a valid offer that gave the Corporation the right to redeem all or part of Hayes' shares and that, pursuant to the Agreement, each of the remaining shareholders had the right to purchase his proportionate share of the shares not being redeemed by the Corporation. The Purchasers further contend that they properly exercised their right to purchase Hayes' shares by notifying the Corporation of their intentions to do so. Thus, according to the Purchasers, they had an enforceable contract.

Hayes contends that the Agreement only contained restrictions on actual transfers of shares and that, because he was not seeking to transfer his shares in violation of the Agreement, the trial court correctly sustained the demurrers.

6

Hayes asserts that the Agreement did not impose on him an affirmative duty to sell his shares to three parties with whom he had not negotiated and to accept only a 20% down payment with the balance of the purchase price payable over time. Hayes further asserts that the Agreement did not give the Plaintiffs an option to purchase his shares and that there could be no contract between the Plaintiffs and him because there was no meeting of the minds. Finally, Hayes argues that there was no basis for ordering specific performance under the Agreement.

We agree with the Purchasers' contentions and reject all of Hayes' contentions. First, the Agreement does more than just restrict the transfer of shares of the Corporation. The plain language of the Agreement establishes the rights of Commonwealth and the remaining shareholders to purchase the shares of "[a] shareholder desiring to sell." It makes no difference under the facts of this case whether this right is called an option or a right of first refusal; clearly, the Agreement gave to Commonwealth and the Purchasers the opportunity and right to purchase the shares that Hayes sought to sell to Davis.[*] Once

---

[*] We conclude that paragraphs 1 and 2 of the Agreement granted rights of first refusal and not options. " 'A right of first refusal is distinguished from an absolute option in that the former does not entitle the [purchaser] to compel an unwilling owner to sell. Instead it requires the owner, when and if he decides to sell, to offer the property first to the person entitled to the right of first refusal.' " Landa v. Century 21 Simmons & Co., 237 Va. 374, 380, 377 S.E.2d 416, 419

7

the Purchasers exercised their right under the Agreement to purchase Hayes' shares that the Corporation had declined to buy, a binding contract existed requiring Hayes to transfer his shares to the Purchasers under the terms of the Agreement.

Next, the Agreement imposes upon Hayes more than the obligation to sell his shares to the Corporation and the Purchasers. The Agreement also imposes upon Hayes the obligation to accept the payment terms set forth therein.

Finally, the Agreement does provide a basis to order specific performance. Paragraph 14 of the Agreement, entitled "Specific Performance," provides the following:

> The parties agree that it is impossible to measure in money the damages which will accrue to a party hereto or to the personal representatives of a deceased Shareholder by reason of a failure to perform any of the obligations of this agreement. Therefore, if any party hereto or the personal representatives of deceased Shareholder shall institute any action or proceeding to enforce the provisions hereof by specific performance any person, including the Corporation, against whom such actions or proceeding is brought, hereby waives the claim or defense therein as such party or such personal representatives has or have an adequate remedy at law.

Moreover, even in the absence of paragraph 14, specific performance would be the proper remedy. Hayes' shares represent unique personal property in a closely held corporation, which property is not purchasable in the market. Therefore, there

---

(1989) (quoting Cities Service Oil Co. v. Estes, 208 Va. 44, 47, 155 S.E.2d 59, 62 (1967)).

8

exists no adequate remedy at law for Hayes' failure to abide by his obligations under the terms of the Agreement.  See Thompson v. Commonwealth, 197 Va. 208, 212-13, 89 S.E.2d 64, 67-68 (1955).

IV

For the foregoing reasons, we hold that the trial court erred in sustaining Hayes' and Commonwealth's demurrers and dismissing the Purchasers' bill of complaint.  Accordingly, we will reverse the trial court's judgment and remand the case for further proceedings consistent with the views expressed in this opinion.

Reversed and remanded.