## CIRCUIT COURT OF BATH COUNTY

Timothy W. Chilton
and Lynn H. Daniel

v.

The Homestead, L.C., et al.

September 8, 2008

Case No. CL07-41

BY JUDGE HUMES J. FRANKLIN, JR.

There are three primary issues set forth in this case on Demurrer, first, whether the court should sustain Defendant's The Homestead, L.C., Demurrer to Plaintiffs' Timothy W. Chilton and Lynn H. Daniel intentional infliction of emotional distress claim because, as Defendant argues, the Plaintiffs have not satisfactorily shown that all of the elements of this cause of action have been met; second, whether the court should sustain Defendant's Demurrer to Plaintiffs' personal injury claim because, as Defendant avers, the Plaintiffs have failed to allege facts showing that Defendant knew or should have reasonably foreseen the risk of personal injury to Plaintiffs due to a third party's criminal negligence and, therefore, had a duty to warn or protect Plaintiffs therefrom; or, alternatively, whether the court should dismiss Plaintiffs' personal injury claim due to Plaintiffs' contributory negligence or voluntary assumption of the risk; additionally, in connection with said personal injury claim, whether the court should sustain Defendant's Demurrer to Plaintiffs' prayer for punitive damages for the commission of an independent, willful tort by the Defendant; third, whether the Plaintiffs have

alleged sufficient facts to establish a claim for breach of contract and, in correlation, whether the court should sustain Defendant's Demurrer to Plaintiffs' prayer for punitive damages for breach of said contract.

Moreover, the court must consider whether the Defendant's Motion Craving Oyer should be overruled because, as the Plaintiffs aver, the contract at issue was an oral contract or, alternatively, is in the possession of the Defendant.

As regards the issues on Demurrer, for the reasons set forth *infra*, the court finds Defendant's arguments most persuasive and, therefore, sustains Defendant's Demurrer to Plaintiffs' claims as articulated above. Accordingly, the court dismisses Plaintiffs' claims with prejudice.

Furthermore, the court holds that, as no contract existed between the Defendant and Plaintiffs, Defendant's Motion Craving Oyer must necessarily be denied.

The court shall address each of the parties' claims in turn.

## I. *Plaintiffs Fail To Allege Facts Sufficient To Support a Claim for Intentional Infliction of Emotional Distress*

In *Harris v. Kreutzer*, the Virginia Supreme Court held that, in order for an action for intentional infliction of emotional distress to survive on demurrer, the plaintiff is required to allege all of the facts necessary to support the cause of action. 271 Va. 188, 203 (2006). Indeed, it is insufficient for the plaintiff in such a case to merely state conclusory allegations, and proper factual support must be provided for each element of the cause of action. *Ogunde v. Prison Health Services, Inc.*, 274 Va. 55, 66 (2007). In particular, the Court has provided the four elements a plaintiff must prove to successfully establish a claim for intentional infliction of emotional distress: (1) that the defendant acted intentionally or recklessly; (2) the defendant's conduct was outrageous and intolerable; (3) there is a causal nexus between the defendant's conduct and the emotional distress suffered by the plaintiff; and (4) severe emotional distress was suffered by the plaintiff. *Harris*, 271 Va. at 203; *Womack v. Eldridge*, 215 Va. 338, 342 (1974).

The court overrules Plaintiffs' objection to Defendant's Memorandum of Law under Rule 4:15 of the Rules of the Supreme Court of Virginia. Plaintiffs' Responsive Memorandum of Law at 1, n. 1. Pursuant to this Rule, absent leave of court, briefs in support of a motion that are five pages or fewer in length must be filed and served, along with requisite notice, at least 14 days before the hearing. As Defendant's Memorandum of Law is clearly in excess of five pages in length, Plaintiffs' objection is moot.

The court recognizes Plaintiffs' objection to the Defendant's Memorandum of Law based on the attachment of exhibits to said Memorandum not part of the record in this case. Defendant's Exhibit I, Plaintiffs' Responsive Memorandum of Law at 2, n. 2. As the Plaintiffs have noted, there is authority in support of dismissal for the filing of such "speaking demurrers." See *Landes v. Erie*, 48 Va. Cir. 298 (1999); *Smith v. General Motors Corp.*, 35 Va. Cir. 112, 113 (1994). Nevertheless, the court follows the course of action taken in *Laguna v. Wallace* and does not dismiss Defendant's Demurrer, but will not consider the aforesaid exhibits. 67 Va. Cir. 535, 537 (2004).

By their Memorandum of Law in Support of Its Demurrer ("Defendant's Memorandum of Law") the Defendant first argues that the "conduct alleged by the Plaintiffs simply does not rise to the required level of outrageousness" mandated by the second prong of the test elucidated *supra*. Defendant Memo. at 3. Here, the Defendant notes that the standard for "outrageous and intolerable" conduct, as outlined in *Russo v. White*, is met where the conduct of the defendant is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." 271 Va. 23, 27 (1991). Indeed, the weight of persuasive authority presented by the Defendant is recognizably in favor of stringently construing this element of intentional infliction of emotional distress. See generally *Douglas v. Dabney S. Lancaster Community College*, 900 F. Supp. 447, 465-66 (W.D. Va. 1997) (plaintiff's claim dismissed despite sufficient evidence that plaintiff was sexually harassed); *Dwyer v. Smith*, 867 F.2d 184, 194-95 (4th Cir. 1989) (sexual comments, accusations of sexual relations with employees, and delivery of pornography to plaintiff insufficient to prove outrageous conduct by the defendant). Based upon this and other persuasive precedent, the Defendant argues that the act of Defendant's employee giving a key to Ms. Chilton and Mr. Daniel in the middle of the night without first obtaining sufficient identification or requesting the Plaintiffs' permission or at least providing Plaintiffs with sufficient warning, is fundamentally inadequate to reach the level of harm necessary to fulfill this component of the cause of action at issue. Am. Corp., ¶ 31. Defendant Memo, at 3.

Secondly, the Defendant's Memorandum of Law similarly contends that the factual allegations set forth do not provide information strong enough to prove that the Plaintiffs have suffered the severe emotional distress required by the fourth prong of the test set forth in *Harris* and *Womack, supra*. Defendant Memo, at 4. The Defendant again relies upon *Russo*, wherein the Court held that, with regard to the severe emotional distress suffered by the

plaintiff, "liability arises only when the emotional distress is extreme, and only where the distress inflicted is so severe that no reasonable person could be expected to endure it." 241 Va. at 27. An objective physical injury, confinement to one's home or a hospital, and lost wages due to alleged distress are, according to the Defendant, acceptable indicators of severe emotional distress as recognized by the Court. *Id.* at 28. By comparison, nervousness, insomnia, stress and stress-related physical symptoms, and social and professional withdrawal are argued to be insufficient indicators of severe emotional distress. *Id.* Moreover, the Defendant avers that symptoms such as nightmares, loss of self-esteem and depression, "mortification, humiliation, shame, disgrace, and injury to reputation" have likewise been inadequate in the eyes of the Court in finding the presence of severe emotional distress. *Harris*, 271 Va. at 204-05. Therefore, because the Plaintiffs have only alleged that "Ms. Daniel suffered from depression, psychological trauma, anxiety, and inability to sleep, such that her ability to function in her daily activities have been diminished considerably," the Defendant contends that the Plaintiffs have not alleged facts to effectively support a claim of severe emotional distress. Am. Comp., ¶ 33, Defendant Memo, at 4-5.

For the reasons provided *supra*, Defendant prays that the court sustain its Demurrer and dismiss Plaintiffs' claim for intentional infliction of emotional distress.

In Plaintiffs' Responsive Memorandum of Law, they first argue that the actions of the Defendant were sufficiently outrageous as the employees of the Defendant "violated many fundamental expectations that are shared among practically all tourist and lodgers." To clarify this point, Plaintiffs aver that their allegations that "the Defendant failed to conduct any investigation into the actual identities of the spouses, gave the spouses an access card to Plaintiffs' guest room without asking Plaintiffs or even informing Plaintiffs that they were doing so, permitted the spouses to enter into the Plaintiffs' guest room, permitted [Mr. Daniel] to batter Plaintiff Daniel, and did much of this against their own internal policies," taken together, "violate the very purposes for which the hotel guest checks in." As such, the Plaintiffs contend, no reasonable person could question the outrageousness and intolerability of Defendant's actions. Plaintiff Resp. Memo, at 6-7.

In response to the Defendant's second contention, the Plaintiffs rely upon *Almy v. Grisham*, wherein the Virginia Supreme Court upheld the plaintiff's cause of action for intentional infliction of emotional distress based on allegations of nervousness, depression, and insomnia resulting in "a complete disintegration of virtually every aspect of her life." 273 Va. 68, 79 (2007). Furthermore, the plaintiff in *Almy* alleged that she was rendered

"functionally incapable of carrying out any of her work or family responsibilities." *Id.* at 80. Noting that the Court distinguished the facts in this case from those present in *Russo* and *Harris*. Plaintiffs argue that "surrounding factors must be taken into account, and allegations beyond or different from those encompassed in *Russo* and *Harris* will establish severe emotional distress" upon demurrer. Plaintiff Resp. Memo, at 8. Plaintiffs also rely upon *Womack v. Eldridge*, in which the Court upheld a cause of action for intentional infliction of emotional distress upon allegations of "great shock, distress, and nervousness" in addition to insomnia and depression. 215 Va. 338, 340 (1974). The Plaintiffs aver that, in light of this precedent, their allegations that Ms. Daniel suffers "depression, psychological trauma, anxiety, and inability to sleep, such that her ability to function in her daily activities has been diminished considerably" are sufficient to establish her severe emotional distress. Am. Comp., ¶ 32; Plaintiff Resp. Memo. at 8. Moreover, Plaintiffs argue, because Ms. Daniel has also allegedly suffered a physical battery, much of the difficulty associated with this cause of action is obviated. Am. Comp. ¶ 21; Plaintiff Resp. Memo, at 9. Therefore, the Plaintiffs assert that the allegations set forth in their Amended Complaint amply overcome the Defendant's Demurrer. Plaintiff Resp. Memo, at 9.

Upon these grounds, the Plaintiffs pray that the court overrule the Defendant's Demurrer and sustain Plaintiffs' claim for intentional infliction of emotional distress.

Defendant's position is most persuasive.

By their respective arguments, both the Defendant and Plaintiffs recognize that "a plaintiff alleging a claim for intentional infliction of emotional distress must allege in her motion for judgment all facts necessary to establish the cause of action in order to withstand challenge on demurrer." *Russo*, 241 Va. at 28, citing *Harris*, 271 Va. at 204. As elucidated *supra*, in *Harris*, the Virginia Supreme Court held that sufficient facts to support each of the following four elements must be alleged: (1) intentional or reckless conduct by defendant; (2) outrageous and intolerable conduct by defendant; (3) a causal connection between defendant's conduct and the emotional distress; and (4) severe emotional distress. 271 Va. at 203. In ruling on a demurrer, the court may only decide whether the plaintiff's factual allegations are legally sufficient to fulfill these elements and thereby state a cause of action. *Almy*, 273 Va. at 76.

First, the Defendant correctly indicates the extremity of indecency, atrociousness, and intolerability that must be proven on the face of the Plaintiffs' Amended Complaint as set forth in *Russo*, 241 Va. at 27. Moreover, the controlling precedent established by *Russo* provides:

> Under the second prong, it is insufficient for a defendant to have acted with an intent which is tortious or even criminal. Even if a defendant has intended to inflict emotional distress or his conduct can be characterized by malice or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort, the requirement of the second prong has not been satisfied.

*Id.* (internal citations omitted).

As discussed *supra*, Plaintiffs' Amended Complaint alleges that the act of Defendant's employee giving a key to Ms. Chilton and Mr. Daniel in the middle of the night without first obtaining sufficient identification or requesting the Plaintiffs' permission or at least providing Plaintiffs with sufficient warning, was behavior meeting this test for outrageous and intolerable conduct. Am. Comp., ¶ 31. Plaintiffs loosely couch this claim in the argument that the source of such outrageousness and intolerability springs from certain general expectations of hotel guests. In addition, the Plaintiffs incorrectly discredit the persuasive authority cited by the Defendant. Although the court is under no obligation to follow this precedent, it may take it under consideration. Although the factual bases of the case at bar and those cited by the Defendant are not analogous, the court finds it helpful to consider the decisions of other jurisdictions in their assessment of conduct that might be considered outrageous and intolerable. The citations provided by the Defendant serve to strongly reinforce the stringent standard set forth in *Russo, supra*.

In light of the rigorous test provided by the Court in *Russo* and the informative persuasive authority provided by the Defendant, Plaintiffs' argument that the Defendant engaged in outrageous and intolerable conduct by providing access to Plaintiffs' room fails to set forth factual allegations that are, on their face, legally sufficient to meet the second element of this cause of action.

In assessing the parties' conflicting arguments as to whether Ms. Daniel did indeed suffer severe emotional distress, the primary standard for determining this element again comes from *Russo*. In *Russo*, the Court holds that "liability arises only when the emotional distress is extreme and only where the distress inflicted is so severe that no reasonable person could be expected to endure it." 241 Va. at 27. In their Amended Complaint discussed *supra*, Plaintiffs aver that, due to the actions of the Defendant, Ms. Daniel "has suffered from depression, psychological trauma, anxiety, and inability to

sleep, such that her ability to function in her daily activities has been diminished considerably." Am. Comp., ¶ 32. The result, Plaintiffs argue, is the suffering of "emotional distress so severe that no reasonable person could be expected to endure it." Am. Comp., ¶ 34. Defendants appear to continue their reliance upon *Russo*, in which case, the plaintiff's nervousness, insomnia, stress, and withdrawal were insufficient to prove severe emotional distress where no "objective physical injury" resulting in medical care, confinement, or lost wages ensued. 241 Va. at 28. The Defendants also correctly note that the burden of nightmares, depression, low self-esteem, shame and other similar afflictions have likewise been held insufficient by the Court. See *Harris*, 271 Va. at 204-05.

Nevertheless, Plaintiffs have also properly noted that the Court recognized the presence of severe emotional distress in the much earlier *Womack* decision. Here, the plaintiff suffered symptoms similar to those allegedly endured by Ms. Daniel: depression, insomnia, shock, and distress. 215 Va. 334, 350 (1974). However, the Plaintiffs also seek to analogize the Court's more recent decision in *Almy* to the allegations set forth regarding Ms. Daniel. Although here again the plaintiff averred many of the same symptoms as those alleged by Ms. Daniel, the plaintiff also asserted the *"complete* disintegration of virtually *every aspect* of her life." *Almy*, 273 Va. at 69 (emphasis added). Moreover, the plaintiff in *Almy* also contended that she was *"functionally incapable* of carrying out *any* of her work or family responsibilities." *Id.* (emphasis added). Although the intended purposes of these references by the Plaintiffs appears to be in support of an analysis greater in scope than that presented by *Russo* and *Harris* alone, the overall effect does not support their case. Indeed, the reference to *Almy* only further distinguishes the case at bar from the Court's most recent decisions regarding the predominant standard for severe emotional distress. Whereas the plaintiff in *Almy* alleged *total* degeneration of almost every facet of her existence along with a *complete* loss of functionality in all spheres of her life, Ms. Daniel only contends that her own symptoms have merely diminished her daily activities "considerably." Am. Comp., ¶ 32.

Additionally, Plaintiffs' argument that the alleged physical battery upon Ms. Daniel by Mr. Daniel precludes the application of the four prong test for determining intentional infliction of emotional distress by the Defendant is incorrect. Plaintiffs' citation to *Womack* does not implicitly state that proof of all four elements of the tort of intentional infliction of emotional distress is unnecessary where physical battery by a third party is also alleged. *Womack*, 215 Va. at 341.

As such, the factual allegations set forth in Plaintiffs' Amended Complaint fail to provide, on its face, a sufficient legal basis for the court to find that the fourth element of this cause of action has been met.

In consideration of the analysis provided *supra*, Plaintiffs' intentional infliction of emotional distress claim fails to present a cause of action recognized by Virginia jurisprudence. For these reasons, the court sustains Defendant's Demurrer and dismisses Plaintiffs' intentional infliction of emotional distress claim with prejudice.

## II. *Plaintiffs Fail To Allege Facts Sufficient To Establish a Claim for Personal Injury Due to Criminal Acts of a Third Party*

As the court noted in its opinion dated April 3, 2008, in the case of *Taboada v. Daly Seven, Inc.*, the Virginia Supreme Court considered "the question of what duty of care an innkeeper owes to a guest as a result of that special relationship for injuries caused by the criminal conduct of a third party while on the innkeeper's property." 271 Va. at 323. In doing so, the Court noted that "[t]he general rule in Virginia is that there is no common law duty for an owner or occupier of land either to warn or to protect an invitee on his property from the criminal act of a third party." *Id.* at 323, citing *Yuzefovski v. St. John's Wood Apts.*, 261 Va. 97, 106 (2001). However, the clear exception to this rule arises where a land owner or occupier maintains a "special relationship" with the invitee or the third party criminal actor, at which time, this general rule is inapplicable and the common law imposes a duty upon the land owner or occupier "to protect or warn the plaintiff against [the known or reasonably foreseeable] criminal conduct of a third party." *Taboada*, 271 Va. at 323. Specifically, the Court held:

> The establishment of the necessary special relationship is the threshold requirement for the application of an exception to the general rule of non-liability in these cases. Even though the necessary special relationship is established so as to create a potential duty on the defendant to protect or warn the plaintiff against criminal conduct of a third party, there is no liability when the defendant neither knows of the danger of an injury to a plaintiff from the criminal conduct of a third party nor has reason to foresee that danger. In short, the special relationship does not make the defendant an insurer of the plaintiff's safety.

716

*Id.*

In his amended complaint, the plaintiff-guest in *Taboada* alleged a pattern of continuous and violent events occurring on the premises of the defendant-hotel over an extended period of time. Additionally, the police had specifically advised the defendant-hotel of the risk of harm to its guests on defendant's premises due to the criminal acts of third parties. Following the standard elucidated *supra*, the Court determined that these facts were sufficient to survive the defendant's demurrer, because they showed that the hotel knew or should have known of the danger of personal injury to its guests as a result of the criminal act of a third party. *Taboada*, 217 Va. at 327. For these reasons, the Court held that the defendant-hotel did have a duty to protect or warn the plaintiff-guest and the trial court erred in sustaining the defendant-hotel's demurrer to the plaintiff-guest's common law personal injury claim. *Id.* at 327-28.

By its Memorandum of Law, the Defendant asserts that Plaintiffs' Amended Complaint fails to allege sufficient facts to support a personal injury claim against the Defendant. Specifically. the Defendant argues that the Plaintiffs have failed to allege facts showing that the Defendant breached its duty under the common law to protect Plaintiffs from a known or reasonably foreseeable risk of personal injury as a result of the criminal acts of a third party. Defendant's Memo, at 6. The Defendant continues to rely upon the distinction between the facts alleged in *Taboada* and those provided by the Plaintiffs' Amended Complaint. Moreover, the Defendant argues that the facts alleged by the Plaintiffs do not provide sufficient evidence that the Defendant knew or reasonably should have foreseen that the Plaintiffs were at specific risk of harm by Ms. Chilton and Mr. Daniel:

> There is no allegation that Homestead knew or should have known that Plaintiffs' Spouses were at Homestead in an effort to catch Plaintiffs committing adultery; that Homestead knew or should have known that Plaintiffs were having an affair; that Homestead knew or should have known that Ms. Chilton and Mr. Daniel were the estranged spouses of Plaintiffs; that Homestead knew or should have known that either Ms. Chilton or Mr. Daniel were violent individuals and/or had a history of assaulting other individuals; or that Homestead knew or should have known that Ms. Chilton and Mr. Daniel posed a safety risk to Plaintiffs. The Am. Comp. even fails to allege that Ms. Chilton and Mr. Daniel believed Plaintiffs were having an affair.

Defendant Memo, at 6-7.

For the foregoing reasons, Defendant argues that Plaintiffs have failed to allege facts sufficient to support a personal injury claim against Defendant pursuant to the holding and facts in *Taboada*. Therefore, Defendant contends that the court should sustain its Demurrer and dismiss Plaintiffs' personal injury claim. Defendant Memo, at 7.

In Plaintiffs' Responsive Memorandum of Law, they argue that their Amended Complaint "contains sufficient allegations to establish a 'special relationship' between the parties, and therefore a legal duty" and "that the Spouses' criminal conduct and the accompanying injuries to Plaintiffs were reasonably foreseeable." Therefore, Plaintiffs contend, "the Defendant breached their duties to Plaintiffs," providing the proximate and legal causes of Plaintiffs' injuries and the resulting damage to the Plaintiffs. Plaintiff Resp. Memo. at 10. In support of this claim, Plaintiffs assert that, pursuant to the Court's decision in *Taboada*, the assertion that the Plaintiffs were guests at the Homestead establishes a "special relationship" between the parties. Plaintiffs then note that the allegations of security personnel involvement and the overall appearance and demeanor of Ms. Chilton and Mr. Daniel made it reasonably foreseeable that the Plaintiffs were at imminent risk of harm. Thus, the subsequent actions of the Defendant reflect a breach of duty to the Plaintiffs. Moreover, Plaintiffs argue that the lack of analogous factual circumstances when comparing *Taboada* to the case at bar does not limit the use of this exception. Plaintiffs' Resp. Memo. at 11.

Additionally, the Plaintiffs rely upon the case of *Yuzefovski v. St. John's Wood Apts.* in their assertion that, in Virginia, the duty to protect a guest from criminal acts of third parties "does not depend upon foreseeability [of harm to the plaintiff] alone, [and] consideration must be given to the magnitude of the burden of guarding against [harm to the plaintiff] and the consequences of placing that burden on the defendant." *Yuzefovski*, 261 Va. 97, 103 (2001), quoting *Gulf Reston, Inc. v. Rogers*, 215 Va. 155, 159 (1974). Based on this precedent, Plaintiffs aver that, "[g]iven that the Defendant's employees actually foresaw a risk of harm to the Plaintiffs, such that they summoned the security personnel, it was drastically unjust for the Defendant to fail to protect Plaintiffs, when the burdens upon them were ever so slight." Plaintiff Resp. Memo, at 12-13.

Provided these allegations, Plaintiffs argue that their Amended Complaint provides sufficient factual support to state a claim for personal injury as the result of a third party's criminal act and, therefore, must survive Defendant's Demurrer. Plaintiff Resp. Memo, at 13.

Here, Defendant's position is again most persuasive.

718

By its supportive memorandum, the Defendant correctly argues that the Plaintiffs have again failed to allege facts which show that Defendant negligently failed to protect the Plaintiffs from a known or reasonably foreseeable risk of personal injury due to the criminal act of a third party. As is explicated, *supra,* the owner of a hotel maintains a "special relationship" with its guests, wherein the hotel must "protect or warn the plaintiff against [the known or reasonably foreseeable] criminal conduct of a third party." *Taboada,* 271 Va. at 323. In *Taboada,* the Virginia Supreme Court found that the plaintiff's allegations could survive the defendant-hotel's demurrer where the plaintiff alleged facts showing a pattern of continuous, violent events occurring on the defendant-hotel's property over an extended period. This pattern of activity upon the defendant's property allowed the Court to find that the defendant did in fact know, or reasonably should have known, that its guests were at risk of imminent physical injury. *Id.* at 327.

Here, Defendant persuasively argues that Plaintiffs have again failed to allege facts which sufficiently show that the Defendant knew or reasonably should have foreseen the risk of imminent physical injury to its guests at the hands of Ms. Chilton and Mr. Daniel. Plaintiffs acknowledge that they do not allege "that the Homestead attracts assaults, that similar assaults had occurred there, that such assaults were invited by the Defendant, or that the Homestead was warned of the likelihood of assaults." Plaintiff Resp. Memo, at 11. However, by their Amended Complaint and responsive pleadings, Plaintiffs aver that the actions and demeanors of Ms. Chilton and Mr. Daniel upon their arrival at the Homestead caused or should have caused the Defendant's employees to foresee the risk of harm to its guests. Am. Comp., ¶ 37. Plaintiffs attempt to further substantiate this claim by arguing that the alleged presence of Defendant's security personnel necessarily shows that Defendant's non-security employees "perceived a risk to the Plaintiffs' well being." Plaintiff Resp. Memo, at 11. Although both parties agree that application of the exception set forth in *Taboada* is fact-specific and thus should not be used only where particularly analogous allegations are made, the Defendant persuasively asserts that the amended claims of the Plaintiffs nevertheless fail to show that the exception would be correctly applied here. Plaintiffs Resp. Memo, at 11; Defendant Memo, at 6.

The demeanors of Ms. Chilton and Mr. Daniel and the appearance of Defendant's security personnel upon Ms. Chilton and Mr. Daniel's arrival and request for admittance to Plaintiffs' room in the early hours of the morning are not by themselves facts which would have caused the Defendant and its employees to know or reasonably foresee the risk of harm to the Plaintiffs. These facts do not provide adequate insight into Defendant's awareness that

the Plaintiffs were having an affair, that Ms. Chilton and Mr, Daniel were there for the purpose of interrupting said affair, or that Ms. Chilton and Mr. Daniel possessed violent tendencies or in any way intended to act in a violent manner towards the Plaintiffs. Defendant Memo, at 7. In addition, the fact that Ms. Chilton identified herself as Plaintiff Chilton's wife and named Mr. Daniel as her brother (however falsely) further compounds the argument that the Defendant and its employees lacked any specific knowledge or reasonable grounds to suspect that Ms. Chilton and Mr. Daniel would cause the Plaintiffs harm. Am. Comp., ¶ 8. The facts provided on the face of Plaintiffs' Amended Complaint do not sufficiently support a claim based upon the limited exception propounded in *Taboada*. As such, Defendant did not breach any duty to Plaintiffs to provide them with protection from Ms. Chilton and Mr. Daniel or any warning of the probable danger posed.

Moreover, where Defendant's employees had neither knowledge nor any reason to know of the risk to the Plaintiffs posed by Ms. Chilton and Mr. Daniel, Plaintiffs' argument that "[g]iven that the Defendant's employees actually foresaw a risk of harm to the Plaintiffs . . . it was drastically unjust for the Defendant to fail to protect Plaintiffs, when the burdens upon them were ever so slight" is of no moment. Plaintiff Resp. Memo, at 12-13.

In consideration of the analysis provided *supra* and pursuant to the precedent set by *Taboada*, Plaintiffs' Amended Complaint fails to establish that Defendant knew or reasonably should have known of a foreseeable risk of personal injury to the Plaintiffs due to the criminal activity of a third party. Accordingly, the court sustains Defendant's Demurrer and dismisses the Plaintiffs' personal injury claim with prejudice.

A. *Plaintiffs Were Not Contributorily Negligent and Did Not Assume the Risk of Injury*

Virginia law recognizes that a plaintiff's contributory negligence completely bars recovery for injuries caused by the negligence of another. *Baker v. Butterworth*, 119 Va. 402 (1916). Indeed, where a plaintiff's complaint shows on its face that the plaintiff is guilty of contributory negligence, the complaint should be dismissed on demurrer. *Chesapeake & O. Ry. v. Swartz*, 115 Va. 723 (1914). At trial, a defendant has the burden to prove by the greater weight of the evidence that the plaintiff was negligent and that such negligence was a proximate cause of the plaintiff's injuries. *Wright v. Norfolk & W. Ry.*, 245 Va. 160, 170 (1993). However, the court must only find that a plaintiff has been contributorily negligent as a matter of law and has thus barred his or her recovery from the defendant where, upon the face of the

complaint, "the facts are so clear that reasonable people could not disagree as to their meaning." *Cromer v. Johnson Village, L.L.C.*, 68 Va. Cir., 442, 447 (2005).

Not unlike the affirmative defense of contributory negligence, Virginia jurisprudence also recognizes that, where a plaintiff voluntarily assumes "the risk of injury from a known danger," this "operates as a complete bar to recovery for a defendant's alleged negligence in causing that injury." *Thurmond v. Prince William Prof'l Baseball Club, Inc.*, 265 Va. 59, 64 (2003). A person of "ordinary intelligence" that chooses to engage in an activity with which he is familiar "may assume the normal risk of the activity." *Id.* at 66. Nonetheless, "application of the defense of assumption of risk requires use of a subjective standard, which addresses whether a particular plaintiff fully understood the nature and extent of a known danger and voluntarily exposed herself to that danger." *Id.* at 64. In support of this view, the Virginia Supreme Court has held that assumption of risk connotes "venturousness" and participation in an activity by the plaintiff that he or she knew could result in harm. *Waters v. Safeway Stores*, 246 Va. 269, 271 (1993). Thus, any participation in a "risky" activity does not necessarily indicate assumption of the risk.

In addition to the claims set forth *supra*, the Defendant also argues that the Plaintiffs' claims are barred under the theories of contributory negligence and assumption of risk.

First, the Defendant contends that, based upon the facts established by the Plaintiffs' original Complaint and Amended Complaint, wherein it is alleged that Ms. Chilton was married to Mr. Chilton and Mr. Daniel was married to Ms. Daniel, it can be affirmatively established that the Plaintiffs were committing adultery. Complaint, ¶ 8; Am. Comp., ¶ 8; Defendant Memo, at 7. According to the Defendant, such adultery was contributorily negligent and acted as the causal connection between the criminal acts allegedly performed by Ms. Chilton and Mr. Daniel and the injuries sustained by the Plaintiffs. Defendant Memo, at 7. In support of this argument, the Defendant cites Va. Code §§ 18.2-366 and 20-91(1), which state, respectively, that adultery is an illegal or immoral act, and that adultery is the first fault ground for an absolute divorce in Virginia. It is upon these grounds that the Defendant argues that the commission of adultery is an unreasonable act and, therefore, the Plaintiffs' involvement in such an activity is unreasonable as to be contributorily negligent. As such, the Defendant contends Plaintiffs' personal injury claim should be dismissed. Defendant Memo, at 7-8.

Alternatively, the Defendant also argues that, based upon the facts established by the Amended Complaint, as discussed *supra*, the Plaintiffs assumed the risk of harm when they engaged in adulterous behavior. Specifically, the Defendant contend that "one of the greatest risks associated with committing an immoral act, such as adultery, is being caught and being injured in the process," and since the Plaintiffs made the independent choice to commit adultery, they "assumed the normal risks of that activity." Defendant Memo, at 8. Thus, the Defendant argues, Plaintiffs' personal injury claim should be dismissed.

In their responsive pleading, Plaintiffs argue that, although adultery is against the law in Virginia under Va. Code § 18.2-366, there is no evidence in the Amended Complaint or otherwise that affirmatively shows that the Plaintiffs were committing adultery pursuant to Va. Code § 18.2-365, which defines adultery by saying that "any person, being unmarried, who voluntarily shall have sexual intercourse with any other person not his or her spouse shall be guilty of adultery." As there is no affirmative proof that the Plaintiffs were engaged in sexual intercourse on the night in question, they argue, Defendant's contention that Plaintiffs were committing adultery fails. Thus, Defendant's theories of contributory negligence and assumption of the risk must also fail, and the Defendant's Demurrer should be overruled. Plaintiff Resp. Memo. at 15-16.

The Defendant's argument fails to persuade the court.

Although the Defendant correctly notes that contributory negligence is a complete bar for recovery in Virginia, Defendant's argument that Plaintiffs' alleged adulterous activity[1] was so negligent as to have directly contributed to the injuries allegedly sustained is unpersuasive. As noted in *Cromer, supra*, it must be apparent upon the face of the pleadings that the Plaintiffs engaged in behavior so clearly negligent that reasonable people could not disagree as to

---

[1] The court is likewise not persuaded by Plaintiffs' argument that the pleadings do not show that the Plaintiffs were engaged in adulterous behavior pursuant to Va. Code § 18.2-365. Defendant correctly notes that the Amended Complaint states that Ms. Chilton was married to Plaintiff Chilton and that Mr. Daniel was married to Plaintiff Daniel. Am. Comp., ¶ 8; Complaint, ¶ 8. Although it nowhere states that Plaintiff's were engaged in sexual intercourse on the night in question, upon demurrer in Virginia, the court considers as admitted the facts expressly alleged and those which fairly can be viewed as impliedly alleged or reasonably inferred from the facts alleged. *Welding, Inc. v. Bland County Service Auth.*, 261 Va. 218, 226 (2001). The court finds that, upon the facts expressly alleged in Plaintiffs' Amended Complaint, it can be reasonably inferred that the Plaintiffs were engaged in an adulterous relationship as defined by Va. Code § 18.2-365.

its character. 68 Va. Cir. at 447. The court is not persuaded by the Defendant's argument that because adultery is a cause for absolute divorce in Virginia under Va. Code § 20-91(1), this automatically makes adultery an unreasonable behavior that will foreseeably result in the assault and battery of those who engage in it. As such, the court finds that reasonable people could indeed disagree as to the negligent nature of adulterous behavior and therefore holds that the Plaintiffs were not contributorily negligent.

Moreover, although the Defendant again correctly notes that a plaintiff's voluntary assumption of risk is a complete bar to recovery in Virginia, Defendant's argument that the Plaintiffs' alleged adulterous activity operates as proof that Plaintiffs voluntarily assumed the risk of assault and battery is likewise unpersuasive. As noted in *Thurmond, supra,* whether one has assumed the risk of harm is determined by a subjective test under which it must be determined that the plaintiff *"fully understood* the *nature* and *extent* of a *known danger* and *voluntarily* exposed herself to that danger." 265 Va. at 64 (emphasis added). Furthermore, the Court has attached the connotation of "venturousness" to this defense, further clarifying that basic involvement in an activity considered by others to be precarious does not necessarily indicate that one has assumed the risk of harm. *Waters,* 246 Va. at 271. The court is not persuaded by Defendant's assertion that the Plaintiffs knew that engaging in adulterous behavior was inherently risky, nor does the court believe that engaging in adulterous activity is a behavior that necessarily attaches itself to the danger of assault and battery. As such, pursuant to *Thurmond* it does not appear that the Plaintiffs could have fully understood the nature and extent of any particular known hazard when they voluntarily committed adultery. Thus, the court finds that the Plaintiffs did not voluntarily assume the risk of their injuries by nature of their alleged adultery.

B. *Plaintiffs Have Failed To Allege Facts Sufficient To Support a Claim for Punitive Damages*

Virginia jurisprudence looks upon the application of punitive damages with disfavor as they "are in the nature of a penalty and should be awarded only in cases involving the most egregious conduct." Indeed, punitive damages are only awarded for common law personal injury claims where the plaintiff can allege facts that adequately establish that the defendant acted in a manner that was willful and wanton. *Woods v. Mendez,* 265 Va. 68, 76 (2003). Pursuant to *Woods,* a defendant's actions are considered willful and wanton where there is conscious disregard of another's rights or when there is

reckless indifference to consequences with the defendant being aware from his knowledge of existing circumstances and conditions that his conduct would likely cause injury to another. *Id.*

By its Memorandum of Law, the Defendant properly notes the holding set forth by the Virginia Supreme Court in *Woods, supra.* Based upon this precedent, the Defendant argues the alleged negligence of the Defendant and its employees, as argued by the Plaintiffs, was not sufficiently willful and wanton to warrant the application of punitive damages. In support of this argument, the Defendant recites the holdings of the Court in two prior decisions in which punitive damages were sought and denied. Defendant Memo, at 9. First, Defendant cites *Puent v. Dickens,* wherein the defendant drove with a blood alcohol content of 0.24 at speeds in excess of the legal limit, made no attempt to stop before striking the plaintiff's vehicle, continued to drink after the accident occurred, and then proceeded to flee the scene. 245 Va. 217 (1993). The Defendant then cites the case of *Hack v. Nester,* in which the Court did not find the defendant had acted with the requisite "conscious disregard for [plaintiff's] safety" necessary to sustain punitive damages. Here, the defendant, who was a repeat DUI offender, got behind the wheel with a blood alcohol content of at least 0.09 and drove his vehicle at night on the wrong side of the road without the use of headlights. 241 Va. 499, 507 (1991). In both cases, the Court did not find that the defendants had acted willfully and wantonly, and the application of punitive damages was denied. By comparison, the Defendant argues that the facts alleged by the Plaintiffs must also be found insufficient to meet the standard of willful and wanton conduct, and the claim for punitive damages based upon alleged negligence should be dismissed. Defendant Memo, at 9-10.

In their responsive memorandum, Plaintiffs contend that the Amended Complaint alleges "facts permitting a jury to find that the Defendant acted with reckless indifference as to [Plaintiffs'] well-being and safety," and therefore punitive damages are appropriate. Plaintiff Resp. Memo, at 14. Noting the precedent set in *Woods, supra,* Plaintiffs argue "Defendant affirmatively perceived a risk to the Plaintiffs' well-being, established by involving its security personnel, thus proving that it was recklessly indifferent when it gave out keys to the Plaintiffs' guest room without their permission or knowledge." Plaintiff Resp. Memo. at 14. Thus, Plaintiffs argue that sufficient facts have been alleged for their prayer for punitive damages to survive Defendant's Demurrer. Plaintiff Resp. Memo, at 15.

Here, the Defendant's argument is once again most persuasive.

As the court has sustained Defendant's Demurrer to Plaintiffs' personal injury claim and dismissed said claim with prejudice, the court will not expound upon this holding at length. Wherefore the court has found no

liability in the Defendant for negligence resulting in Plaintiffs' personal injuries, it follows that the Plaintiffs have not alleged facts upon which the court will sustain a prayer for punitive damages. Specifically, where the court has found that the Defendant has not acted in a negligent manner and is not liable for the personal injuries of the Plaintiffs, the Defendant has not engaged in willful and wanton conduct pursuant to *Woods, supra*. Therefore, the court sustains Defendant's Demurrer to Plaintiffs' prayer for punitive damages.

### III. *Plaintiffs Have Failed To State a Claim for Breach of Contract*

In Virginia, the elements of a claim for breach of contract are well-established. The essential elements of a cause of action for breach of contract are (1) a legal obligation of a defendant to a plaintiff, (2) a violation or breach of that obligation, and (3) a consequential injury or damage to the plaintiff. *Hamlet v. Hayes*, 273 Va. 437, 442 (2007), citing *Caudill v. Wise Rambler*, 210 Va. 11, 13 (1969). Moreover, "[m]utual assent by the parties to the terms of a contract is crucial to the contract's validity." *Wells v. Weston*, 229 Va. 72, 78 (1985). Where an oral contract is at issue, a valid and enforceable oral agreement must have terms that are "reasonably certain, definite, and complete to enable the parties and the courts to give the agreement exact meaning." *Richardson v. Richardson*, 10 Va. App. 391, 395 (1990). In addition, "the proponent of [an] oral contract has the burden of proving all elements" of the contract. *Id.* at 396.

The Defendant argues that Plaintiffs are merely attempting to couch their claim for personal injuries in a claim for breach of contract. In support of this argument, the Defendant notes that, in their Amended Complaint, Plaintiffs aver that, as a result of an alleged breach of contract, Plaintiffs "suffered physical injuries, emotional distress, and injury to their personal and professional reputations." Defendant Memo. at 5; Am. Comp., ¶ 55. In addition, Defendant also notes that Plaintiffs contend the contract at issue "arose from their agreement to stay at the Homestead and all remuneration provided to the Homestead." Defendant Memo, at 5, Am. Comp., ¶ 6. However, the alleged contract has not been attached by the Plaintiffs to their pleadings. Defendant Memo, at 5. Furthermore, Defendant cites *Taboada* in support of its argument that a hotel's liability to a guest in relation to injury resulting from the criminal acts of a third party may be governed by common law only. Defendant Memo, at 5-6. According to the Defendant, *Taboada* holds that the law of contracts does not apply to the relationship between a hotel and its guests, and thus Plaintiffs' claim for breach of contract should be dismissed. *Taboada*, 271 Va. at 322.

In response, Plaintiffs contend that the Defendant's interpretation of the holding set forth in *Taboada* is misguided. The Plaintiffs likewise cite Taboada, wherein the Court held that "with respect to the specific facts of this case, the duty of care owed to Taboada by Daly Seven . . . is not governed by the provisions of [Va. Code § 35.1-28], but remains governed by the common law." 271 Va. at 322. In clarifying their argument, Plaintiffs point out that, in *Taboada*, the Court is upholding the application of the common law where the plaintiff-guest had filed a complaint based upon Virginia statutory law. As such, the Court did not limit the legal relationship between a hotel and its guests to the exclusive sphere of the common law, but rather held that the specific application of Virginia statutory law in that particular case was inappropriate. Plaintiff Resp. Memo. at 16. Consequently, *Taboada* does not hold that breach of contract claims cannot be brought against hotels by their guests. As a result, the Plaintiffs argue that sufficient facts have been alleged in support of a cause of action for breach of contract. Plaintiffs aver that a "contract has been alleged, with terms which were breached by the Defendant," and "[a]s such, Plaintiffs are entitled to recover for their damages caused by that breach." Plaintiff Resp. Memo. at 16. It appears that Plaintiffs refer to the allegations set forth in their Amended Complaint, as cited by the Defendant *supra*, wherein they allege that "Plaintiffs' agreement to stay at the Homestead and all remuneration provided to the Homestead in return for Plaintiffs' lodging and other promises, consideration, and benefits constituted a breach of contract between the Plaintiffs and Defendant." Am. Comp., ¶ 6. Based on the foregoing arguments, Plaintiffs ask that the court overrule Defendant's Demurrer to Plaintiffs' breach of contract claim. Plaintiff Resp. Memo. at 17.

Although not fully persuaded by the argument set forth by the Defendant, the court finds that there is no breach of contract between the Defendant and Plaintiffs. The court recognizes that the Plaintiffs have provided the correct interpretation of the Virginia Supreme Court's use of the common law in *Taboada*. The Court did not specifically hold that the law of contracts is inappropriate as the basis for a cause of action between a hotel and its guests, but merely held that, as applied to the claims brought for personal injuries by the plaintiff-guest, the common law (and not Va. Code § 35.1-28) was the proper authority. *Taboada*, 271 Va. at 322.

As elucidated *supra*, in order for a party to properly claim a breach of contract it must be sufficiently shown that (1) there is a legal obligation of the defendant to the plaintiff, (2) the defendant violated or breached that obligation, and (3) the plaintiff has consequently suffered an injury or damage as a result of said breach. *Hamlet*, 273 Va. at 442. Additionally, the Virginia

Supreme Court has held that contractual validity turns upon the common assent of the parties to the contract terms. *Wells*, 229 Va. at 78. Here, Plaintiffs allege that they provided payment and an agreement to stay at the Homestead in exchange for their lodging therein. Am. Comp., ¶ 6. According to the Plaintiffs, under the terms of this alleged contract the Defendant was bound to provide the Plaintiffs with "exclusive use and enjoyment of their guest room, excepting intrusions only in emergencies or by resort staff for reasonable upkeep, maintenance, and guest services." Moreover, the Defendant was required to inform the Plaintiffs "when anyone other than a Homestead employee or agent was given an electronic key card to their room." Finally, Plaintiffs allege that "Defendant's staff was required to make best efforts to insure that the Plaintiffs experienced a good night's sleep which would leave them well-rested and make them feel at home." Am. Comp., ¶¶ 48, 49, 50. However, Plaintiffs state that they are "at this time, unaware of any written document constituting the terms of the contract between themselves and Defendant." Plaintiff Resp. Memo, at 3-4.

Plaintiffs have failed to allege facts sufficient for the court to find that a written contract existed between the Plaintiffs and Defendant. Based upon the precedent set forth in *Hamlet, supra*, Plaintiffs have failed to show that Defendant had a legal obligation to perform the duties asserted by Plaintiffs' Amended Complaint. More specifically, Plaintiffs have failed to provide any written memorialization of the terms of said contract or even any proof that payment was given by the Plaintiffs to the Defendant in consideration of the fulfillment of these terms. Moreover, Plaintiffs expressly indicate that they themselves are "unaware of any written document constituting the terms of the contract" between the Plaintiffs and Defendant. Plaintiff Resp. Memo, at 3. Overall, there is no indication that the court has been given any valid factual basis upon which to find that a written contract containing the terms proffered by the Plaintiffs existed or that the parties had reached any mutual assent whatsoever as to the contractual provisions alleged by the Plaintiffs.

Furthermore, Plaintiffs likewise cannot successfully argue the existence of an oral agreement in support of their breach of contract claim. As discussed in *Richardson, supra*, the court recognizes that, for such a contract to be upheld, there must exist terms that are "reasonably certain, definite, and complete" in their ability to allow the parties and the court to give an accurate meaning to the agreement. 10 Va. App. at 395. The court's analysis as to the sufficiency of the Plaintiffs' pleadings regarding the factual bases of a written contract holds equally true here. The Plaintiffs have again failed to provide any factual basis in support of reasonably certain, definite, and complete provisions of any oral contract clearly assented to by both parties.

In consideration of the analysis provided *supra*, Plaintiffs' Amended Complaint fails to allege facts that satisfactorily establish that a contract, either written or oral, existed between Plaintiffs and Defendant. Accordingly, the court sustains Defendant's Demurrer and dismisses the Plaintiffs' breach of contract claim with prejudice.

A. *Plaintiffs Have Failed To Allege Facts Sufficient To Support a Claim for Punitive Damages*

Where a party seeks to recover punitive damages for an alleged breach of contract, that party must first provide satisfactory factual allegations in support of the defendant's commission of an independent, willful tort. *Kamlar Corp. v. Haley*, 224 Va. 699, 707 (1983).

By their respective memoranda, both parties recognize the rule as stated in *Kamlar*. Defendant Memo, at 10; Plaintiff Resp. Memo, at 17. The Defendant argues that, as Plaintiffs' Amended Complaint does not contain allegations to sufficiently support an independent, willful tort, their prayer for punitive damages based on an alleged breach of contract should be dismissed. Defendant Memo, at 10. Plaintiffs, however, contend that "the facts alleged . . . are sufficient to constitute an independent willful tort," and therefore "Plaintiffs' request for punitive damages based upon their breach of contract claim is proper." Plaintiff Resp. Memo, at 16.

Wherefore the court has already dismissed with prejudice Plaintiffs' personal injury claim against Defendant for negligence, Plaintiffs have not proven the commission of an independent, willful tort whereby to sustain their prayer in support of punitive damages for breach of contract. Therefore, the court again sustains Defendant's Demurrer to Plaintiffs' prayer for punitive damages.

IV. *Defendant's Motion Craving Oyer Is Denied*

A defendant may crave oyer of any document forming the basis of a plaintiff's claim, as "no intelligent construction of any writing or record can be made unless all of the essential parts of such paper or record are produced." *Bagwell v. City of Norfolk*, 59 Va. Cir. 205, 208 (2002), quoting *Culpeper Nat'l Bank v. Morris*, 168 Va. 379, 382 (1937). Indeed, "a litigant has no right to put [blinders] on the Court and attempt to restrict its vision to only such parts of the record as the litigant thinks tend to support his view." *Culpeper*, 168 Va. at 382-83. As such, a document for which oyer is craved "must be one that is essential to the plaintiff's complaint." *Station # 2, L.L.C. v. Lynch*, 75 Va. Cir. 179 (2008).

728

By its Motion, the Defendant requests that the court take oyer of the contract referenced by the Plaintiffs in their Amended Complaint. However, the Plaintiffs argue that, "[b]ecause the terms of the contract between Plaintiffs and Defendant were not reduced to writing, or if they were, that writing is in the possession of the Defendant, the Defendant's motion Craving Oyer should be overruled." Plaintiff Resp. Memo at 3.

As the court has held that no written contract has been properly alleged as existing between the Plaintiffs and Defendant, the court must necessarily overrule Defendant's Motion Craving Oyer.

## *Ruling*

It is the decision of the court that Plaintiffs have failed to allege facts necessary to state a claim for intentional infliction of emotional distress, personal injury due to the criminal act of a third party, and breach of contract. For these reasons, the court sustains Defendant's Demurrer to Plaintiffs' claims on each count and dismisses Plaintiffs' claims with prejudice. Additionally, the court sustains Defendant's Demurrer to Plaintiffs' prayer for punitive damages in connection with their personal injury and breach of contract claims. Furthermore the court finds that, as Plaintiffs have failed to allege facts necessary to establish the existence of a contract between the Plaintiffs and Defendant, the court must necessarily overrule Defendant's Motion Craving Oyer.